IN THE UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MERINDA EVANS** | ) |
|     **Plaintiff** | ) |
| | ) |
| v. | )     Case No. 1:05-1063 (GK) |
| | ) |
| **MICHAEL MUKASEY** | ) |
|     **Defendant** | ) |
| | ) |

### PLAINTIFF'S REQUEST FOR ADMISSIONS

**NOW COMES** Plaintiff, Merinda Evans, by undersigned counsel pursuant to FRCP 36(a), and hereby requests that Defendant respond to the following requests for admission, under oath, within 30 days from today's date.

### INSTRUCTIONS

1. Your answers must include all information concerning the matters inquired about and available to you, your attorneys or other agents.

2. If you fail to respond in a timely fashion, you waive any objection to the Requests, and the Court may order all Requests deemed admitted.

3. In formulating your answer you may not give lack of information or knowledge as a reason for failure to admit or deny, unless you state that you have made reasonable inquiry that the information known or readily obtainable by you is insufficient to enable you to admit or deny the Request.

4. If only part of a Request is objectionable, you must answer the remainder of the Request.

5. Any objection to a Request or part of a Request must clearly state the specific grounds for the objection.

6. A denial of all or any portion of each Request must be unequivocal.

## DEFINITIONS

1.  "Defendant" refers to Michael Mukasey, the Attorney General, the Federal Bureau of Investigation, hereinafter "FBI" and each of its agencies, properties, facilities, affiliates, managers, divisions, subdivisions, predecessors, directors, officers, employees, agents, contractors, members, representatives and all persons acting or purporting to act on its behalf.

2.  "Plaintiff" refers to Merinda Evans.

3.  "Document" means any writing or recording as defined in Rule 1001 of the Federal Rules of Evidence, including any drafts, revisions and computer-readable material.  If a document has been prepared in several copies which are not identical, or if the original identical copies are no longer identical by reason of subsequent notation or other modification of any kind whatsoever, including, but not limited to, notations on the backs of pages thereto, each non-identical copy is a separate document.  "Document" shall also include any data compilation from which information can be obtained or translated if necessary by you through detection devices into reasonable usable form.

4.  "Person" includes, without limitation, any natural person, proprietorship, corporation, partnership, trust, joint venture, association, organization, business entity or governmental agency.

5.  "Relating to" and "relates to" mean, without limitation, relating to, constituting, concerning, mentioning, referring to, describing, summarizing, evidencing, listing, relevant to, demonstrating, or tending to prove, disprove, or explain.

6.  "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

7.  The use of the singular includes the plural, and vice versa.

8.  The use of one gender includes all others, appropriate in the context.

9.  "VCS" refers to Video Communications Specialist

10. "DNME" refers to does not meet expectations.

11. "OPR" refers to the Office of Professional Responsibility.

12. "PIP" refers to a Performance Improvement Plan

13. "PAR" refers to a Performance and Accountability Report.

14. "FAVIAU" refers to the Forensic Audio, Video and Image Analysis Unit

15. "ERF" refers to the Engineering Research Facility.

16. "PRAU" refers to the Performance, Recognition and Awards Unit.

17. "Identify" means and requires you to state:

   (a)  With respect to a person, his or her name, address, telephone number, employer and job title.

   (b)  With respect to a document, the name and address of its author or maker, the names and addresses of all persons who were addressees, the date on which it was created or made, the nature of the document and the substance of the information or communication set forth in the document.

   (c)  With respect to a tangible or demonstrative thing, a sufficiently graphic description to distinguish it from other tangible or demonstrative things of the same class or type.

    (d)    With respect to conversations and written or oral communications:

        (i)    The date on which each conversation or communication occurred

        (ii)    The persons making such conversation or communication

        (iii)    The substance of the conversation or communication

        (iv)    The names and addresses of every person present when the conversation or communication occurred

        (v)    The place where the conversation occurred.

18. "Relevant time period" is defined from the year 2000 until 2003.

## REQUEST FOR ADMISSIONS

1. Admit or Deny that Plaintiff is an African-American, female.
2. Admit or Deny that Plaintiff began employment on or about June 13, 1982, with the F.B.I.
3. Admit or Deny that Plaintiff possessed an undergraduate or bachelor's degree at the time she began her employment with Defendant.
4. Admit or Deny Ronald Evans is a male and that he is similarly-situated to Plaintiff.
5. Admit or Deny that VCS Merinda Evans passed the Laboratory Quality Assurance Test administered by the Laboratory Division in 1999.
6. Admit or Deny on or about February 2001, Plaintiff attended and successfully completed "dTective" training class.
7. Admit or Deny that on or about March 15, 2001, Plaintiff, Ronald Evans and Robert Keller met with Section Chief Keith DeVincentis.
8. Admit or Deny prior to the March 2001 meeting, there were no guidelines or procedures in place for VCS employees to perform their duties and responsibilities
9. Admit or Deny that the nature of the meeting was to address actions by perceived by management which they believed hindered effectiveness.
10. Admit or Deny that as a result of the meeting held on March 21, 2001, a "mandatory examiner" schedule was created.
11. Admit or Deny that on March 29, 2001, Plaintiff, Ryan and Sarah Ziegler met to discuss Plaintiff's "concerns."

12. Admit or Deny Thomas Musheno became the supervisor and rating official of Plaintiff, Mr. Evans and Robert Keller June 2001

13. Admit or Deny that on December 3, 2001, Plaintiff was advised that a Non-Serious Misconduct, OPR investigation was opened concerning her playing video games on her computer.

14. Admit or Deny Plaintiff filed a discrimination complaint on or about December 2001, against Thomas Musheno, Dale Linden and Jim Ryan.

15. Admit or Deny that Plaintiff was informed she was working at an "acceptable level" in March 2002, after she successfully completed her ninety (90) day probation period for the DNME rating in December 2001.

16. Admit or Deny that Thomas Musheno performed case reviews of Plaintiff's work product.

17. Admit or Deny that it is possible that Thomas Musheno found errors during the case review in other employee's work product; made the necessary corrections and did not disclose the errors to the Examiner.

18. Admit or Deny that according to PRAU, all employees in the supervisor's span of control are required to be rated by the same criteria and at the same level of scrutiny.

19. Admit or Deny that there were no Standard Operating Procedures in place during the relevant time period for taking notes and report writing for VCS employees.

20. Admit or Deny in July 2002, Plaintiff and Ronald Evans requested and were denied reassignment to ERF Quantico.

21. Admit or Deny Plaintiff attended and successfully completed the AVID medical Computer Training Courses in June 2002.

22. Admit or Deny Plaintiff and Mr. Evans were selected for the "on call" team to be deployed to Salt Lake City, Utah for the 2002 Winter Olympics.

23. Admit or Deny Phil Williams, a white male, was transferred to the Training Unit after alleged poor performance.

24. Admit or Deny Phil Williams was censured for leave abuse.

25. Admit or Deny Thomas Musheno performed administrative reviews of Plaintiff's casework.

26. Admit or Deny that the Defendant did not have a quality assurance policy or procedure in effect for VCS employees during Plaintiff's audit.

27. Admit or Deny Thomas Musheno permitted cases to be sent to contributors as "completed and reviewed."

28. Admit or Deny Plaintiff was assigned expedited cases for review while she was on a PIP Plan.

29. Admit or Deny Barbara Snyder was selected for the position of Quality Assurance Manager during the relevant time period.

30. Admit or Deny Barbara Snyder was directed to audit Plaintiff only and not any other FAVIAU employee.

31. Admit or Deny Barbara Snyder's expertise was in audio examination and not video examination.

32. Admit or Deny that while Thomas Musheno selected Plaintiff's cases to audit her performance, he was aware that he was identified in Plaintiff's discrimination complaint.

33. Admit or Deny Dale Linden performed technical reviews of all Plaintiff, Ronald Evans and Robert Keller.

34. Admit or Deny that there was an official Standard Operating Procedure in place for FAVIAU during the period between 2000 and 2003.

35. Admit or Deny that Plaintiff completed the F.B.I.'s Supervisor Training Course and was eligible for the supervisory position.

36. Admit or Deny that no other FAVIAU or VCS employee had a minimally acceptable performance rating or any other performance issues before 2000.

37. Admit or Deny that Plaintiff was the only FAVIAU or VCS employee audited from 2000 to 2003.

38. Admit or Deny that retraining, demotion or transfer to another unit was considered in disciplinary action regarding Plaintiff.

39. Admit or Deny Plaintiff had approached management twice regarding transferring to another unit.

40. Admit or Deny that management refused both of her requests for transfer to another unit.

41. Admit or Deny that Phil Williams is a white male.

42. Admit or Deny that Phil Williams experienced performance issues, attendance and OPR infractions in FAVIAU .
43. Admit or Deny that Phil Williams was allowed to transfer to another division.
44. Admit or Deny that Plaintiff's 22 years of impeccable service was considered in choosing between the options of retraining, demotion, and transfer before dismissal.
45. Admit or Deny that FAVAIU had a training program in place during the period of 2000-2003.
46. Admit or Deny that Barbara Snyder of FAVIAU was formulating a comprehensive training program of FAVIAU and VCS between 2000-2003.
47. Admit or Deny Plaintiff received a "Does Not Meet Expectations" PAR from Thomas Musheno for the rating period ending November 30, 2001.
48. Admit or Deny Ronald Evans and Robert Keller also received a DNME PAR for the rating period ending November 30, 2001, and were both placed on a PIP
49. Admit or Deny on or about December 21, 2001,Plaintiff initiated her first EEO complaint against Dale Linden, Jim Ryan and Thomas Musheno.
50. Admit or Deny on or about March 19, 2002, Plaintiff submitted her first reconsideration to her PAR.
51. Admit or Deny expedite cases require a faster or quicker turnaround time.
52. Admit or Deny that Plaintiff was assigned 11 expedited cases out of 15 cases while she was on the PIP.
53. Admit or Deny Plaintiff, Ronald Evans and Robert Keller were supervised by Thomas Musheno, while they worked in the Video Support Unit.
54. Admit or Deny that no other FAVIAU employee received an audit of his or her work performance during the relevant time period.
55. Admit or Deny that since June 2002, Plaintiff was the only employee who received regular technical reviews.
56. Admit or Deny that Plaintiff's casework was monitored by Thomas Musheno as early as April 2002, without her knowledge.
57. Admit or Deny that on or about June 2002, Plaintiff was informed that her casework would be "officially monitored" by Jim Ryan and Dale Linden.

7

58. Admit or Deny on or about July 2002 Plaintiff and Ronald Evans requested reassignment to ERF Quantico, which was denied by Jim Ryan.

59. Admit or Deny on or about October 30, 2002, Plaintiff was demoted from her VCS position to an undetermined status and her duties as VCS were reassigned.

60. Admit or Deny on or about November 6, 2002, Plaintiff was called into a meeting with Dale Linden and Barbara Snyder and handed a "case audited report."

61. Admit or Deny on or about November 20, 2002, Plaintiff received another DNME in one critical element of her PAR.

62. Admit or Deny that Plaintiff requested a "jeopardy statement."

63. Admit or Deny Jose Garcia, EEO representative, requested a copy of the "jeopardy statement" from Plaintiff's managers.

64. Admit or Deny Plaintiff was never presented with a "jeopardy statement" or writing memorializing that she would be on a probationary period after successfully completing the PIP.

65. Admit or Deny that the rating included incidents such as when Plaintiff walked passed Thomas Musheno in the hallway she did not "say hello."

66. Admit or Deny on or about November 20, 2002, Plaintiff was advised she would be required to report to work at the F.B.I. facility in Quantico, Virginia.

67. Admit or Deny on or about December 2, 2002, Jim Ryan replaced Thomas Musheno as Plaintiff's immediate supervisor and rating official.

68. Admit or Deny on or about December 24, 2002, Plaintiff initiated her second EEO complaint.

69. Admit or Deny on or about January 2003, Plaintiff received a propose termination letter.

70. Admit or Deny on or about February 14, 2003, Plaintiff was terminated from her employment with Defendant.

71. Admit or Deny Ronald Evans and Robert Keller also received a DNME PAR for the rating period ending November 30, 2001, and were both placed on a PIP.

72. Admit or Deny after receiving the January 2002, DNME PAR, Plaintiff was placed on a PIP.

73. Admit or Deny that Robert Keller began his employment with Defendant as a Clerk in the mailroom.

74. Admit or Deny that Robert Keller was subsequently assigned to the Director's Office.
75. Admit or Deny that Robert Keller was placed in the VCS position, non-competitively.
76. Admit or Deny Robert Keller held the position of VCS in the FAVIAU.
77. Admit or Deny Robert Keller did not have an undergraduate or bachelor's degree at the time he was selected for the VCS position.
78. Admit or Deny Robert Keller is a white male and that he is similarly-situated to Plaintiff.
79. Admit or Deny that in the 2000-2001 rating period, the Video Support Unit experienced a significant backlog of examination assignments and "low production numbers."
80. Admit or Deny Robert Keller's poor performance was known by his managers and supervisors including Barry King, George Skaluba, Pete Smith, Tom Musheno.
81. Admit or Deny that Pete Smith reassigned Robert Keller's delinquent caseload to Plaintiff and Ronald Evans.
82. Admit or Deny that Tom Musheno verbally reprimanded Robert Keller for reading the newspaper.
83. Admit or Deny that Tom Musheno verbally reprimanded Robert Keller for use of his computer for personal internet matters.
84. Admit or Deny that Tom Musheno verbally reprimanded Robert Keller for leaving his safe unlocked.
85. Admit or Deny that Pete Smith provided Robert Keller with compensatory time in order to complete his delinquent cases.
86. Admit or Deny at the end of the 2000-2001 rating period, Robert Keller received a Superior Rating.
87. Admit or Deny at the end of the 2000-2001 rating period Plaintiff received a Fully Successful rating.
88. Admit or Deny at the end of the 2000-2001 rating period Mr. Evans received a Fully Successful rating.
89. Admit or Deny that Barry King, George Skealba admonished or counseled Robert Keller regarding his late cases or backlogs.
90. Admit or Deny that both Thomas Musheno and Linden testified during their depositions that Robert Keller's work was deficient and that he was counseled for his performance.

91. Admit or Deny Robert Keller testified during his deposition that he only received adverse performance information as it relates to his interacting well with others.
92. Admit or Deny that Robert Keller was never informed by Barry King regarding Ronald Evans' report of Robert Keller hiding files.
93. Admit or Deny Robert Keller testified that he did not receive any adverse performance evaluations during his entire career with Defendant.
94. Admit or Deny Robert Keller received a PIP from Jim Ryan in the form of an electronic mail directing him to increase the production of examining cases.
95. Admit or Deny Robert Keller received a DNME for not "working well with others."
96. Admit or Deny that as a result of the backlog of cases, a goal of completing two cases per week was required of VCS employees by Section Chief Keith DeVincentis.
97. Admit or Deny that Robert Keller reported a number of delinquent cases during the performance period 2000-2003.
98. Admit or Deny that Robert Keller was never verbally reprimanded for his delinquent casework.
99. Admit or Deny that delinquent casework is a critical element that could result in disciplinary action.
100. Admit or Deny that Robert Keller never had the issue of delinquent casework addressed in his Performance Rating, PAR during the period of 2000-2003.
101. Admit or Deny that on June 2002, Robert Keller requested and was granted a reassignment to ERF Quantico.
102. Admit or Deny that Robert Keller testified that he was never counseled for the quality of his work while assigned at headquarters.
103. Admit or Deny that on or about June 13, 2003 Robert Keller received a step increase.
104. Admit or Deny that Robert Keller was appointed in charge of the hiring panel to select Plaintiff's replacement after her termination from the FBI.
105. Admit or Deny Barry King and George Skaluba encouraged Plaintiff and Ron Evans to become Examiners to assist in the backlog of Robert Keller's case production.
106. Admit or Deny that the VCS position required a bachelors or undergraduate degree from an accredited university to become a laboratory examiner.
107. Admit or Deny that initially after VCU became a part of ERF Jim Ryan did not want

    Robert Keller to TDY and perform examinations because he did not have an undergraduate degree.

108. Admit or Deny that Ron Evans discovered delinquent case file folders containing official documents and video tape evidence hidden under the computer flooring in the unit that was assigned to Robert Keller.

109. Admit or Deny that Defendant took no administrative action after management was informed of Robert Keller hiding files.

110. Admit or Deny Robert Keller's was counseled for failing to return phone calls of clients and contributors regarding his delinquent cases.

Respectfully submitted on behalf of Plaintiff:

_____/S/_____  
Nathaniel D. Johnson (MD #14729)                    Date:   December 12, 2007  
Richard L. Thompson (D.C. Bar #15980)  
The Law Firm of Nathaniel D. Johnson  
3475 Leonardtown Road, Suite 200  
Waldorf, Maryland 20602  
301 645-9103