WASHINGTON, D.C.

## SWORN STATEMENT

I, Merinda Ellis Evans, GS-13, Video Communications Specialist, Forensic Audio Video Image Analysis Unit (FAVIAU), Investigative Technologies Division, Federal Bureau of Investigation Headquarters, Federal Bureau of Investigation (FBI) do hereby solemnly swear:

I have been advised by Supervisory Special Agent (SSA) Julio Gracia of the Office of Equal Employment Opportunity Affairs, FBI, that he is investigating my complaint of employment discrimination (F-03-5742) pursuant to Title 29 of the Code of Federal Regulations, Part 1614.

I understand that the issue under investigation is whether I was discriminated against based on RACE (BLACK), SEX (FEMALE), and REPRISAL for my prior participation in EEO protected activity when:

1) On or about October 30, 2002, I was demoted from forensics examiner to an undetermined status and my duties were reassigned;

2) On November 20, 2002, I received a "Does Not Meet Expectations" rating in one critical element of my Performance Appraisal Report (PAR);

3) On or about November 20, 2002, I was advised that I would be required to report to work at the FBI facility in Quantico, Virginia; and

4) I was terminated from employment with the Federal

PAGE 1 OF  7                                    AFFIANT'S INITIALS *M.E.E.*

Bureau of Investigation on February 14, 2003.

## BACKGROUND

ENTERED ON DUTY: June 15, 1980.

## DETAILS

<u>1. On or about October 30, 2002, I was demoted from forensics examiner to an undetermined status and my duties were reassigned.</u>

On November 6, 2002, I was called into a meeting with Acting U.C. Dale Linden, Supervisor Thomas Musheno, and Quality Assurance Manager Barbara Snyder. Also present, was Artese Kelly who I had asked to accompany me to this meeting as an observer. In this meeting, I was handed a case audit report that contained five case records that were "randomly" selected from December 1, 2001, to June 1, 2002. I had no knowledge that I was being audited. To my knowledge there were no audits of any of the other FAVIAU employees during this period. I later learned that I was the only person audited in years. Three of the five cases that were audited were reviewed and signed by Musheno and then sent out to the contributors. I wonder whether Musheno was reprimanded for these cases, in the manner that I was being reprimanded.

Prior to this audit I was required to report to Linden each week for scheduled technical reviews and with Snyder for report reviews. It was my understanding that the reviews were supposed to assist me in understanding the new procedures used by

PAGE 2 OF __7__                              AFFIANT'S INITIALS _MEE_

the FAVIAU team located in Quantico, which were different from the procedures used by the team at FBIHQ.

I was told that I would be taken off casework and forensic examination duties. There was no mention of there being a trial period or any possibility of being reinstated as an examiner. I was given a list of activities assigned to me on this day and an estimated time of completion.

2. On November 20, 2002, I received a "Does Not Meet Expectations" rating in one critical element of my Performance Appraisal Report (PAR).

On November 20, 2002, I was called into a meeting with Acting U.C. Linden and Supervisor Musheno to receive my "end of annual period" PAR. I requested EEO counselor Kenny Beverly to sit on the meeting. I received my PAR with a warning and a "Does Not Meet Expectations" on Critical Element 6 ("Maintaining High Professional Standards"). In the narrative there were examples of casework that were reviewed by Musheno and that were corrected, completed, and signed off by him. Many of the errors were related to documentation and labeling that were corrected. During the time covered by this PAR, I was under a great deal of stress and duress due to the hostile environment that I was working under. I even had to contact an EAP counselor several times.

3. On or about November 20, 2002, I was advised that I would be

PAGE 3 OF __7__                    AFFIANT'S INITIALS _MEE_

required to report to work at the FBI facility in Quantico, Virginia.

During the November 20 meeting, I was told that starting on December 2, 2002, I would be reporting directly to Acting U.C. Linden as my supervisor and not to Thomas Musheno. When I reported to Linden on December 2, he seemed surprised to see me as if he had forgotten that I was supposed to report to him. Actually, the list of assignments that was given to me dealt with work that had do be done at FBIHQ. Therefore, my actual reassignment to Quantico was delayed.

4) I was terminated from employment with the Federal Bureau of Investigation on February 14, 2003.

On January 6, 2003, I while at work at Quantico, I was told by the front office secretary that I had an appointment to meet with Section Chief Anthony DiClemente in fifteen minutes. I told her that I had no idea that I had meeting scheduled. I went to DiClemente's office and Assistant Director Thomas Richardson was waiting with him. They presented me with a letter proposing my removal from my position. I was in shock because I had no idea that this action was being considered. I began to cry. I told DiClemente that I was in the middle of an EEO investigation and that I felt that this was the reason all this coming about. He seemed not to be aware that an EEO investigation was in progress and I saw him write some notes.

On February 13, 2003, U.C. Steve Lancer and Dale Linden

PAGE 4 OF 7       AFFIANT'S INITIALS M.E.E.

toured my work area. At this time, I was told that I and Specialist Ron Evans, (my husband), would remain at FBIHQ till further notice.

On February 14, 2003, the new Unit Chief, Steve Lancer, and Section Chief DiClemente came to my work area and told me that they needed to meet with me. We went to a private area on the floor and then they presented me with a letter of dismissal. I had no idea that this was going to happen. Lance and Diclemente were courteous, but were not forthcoming with any information other that what was already in the letter. I asked them what my options were, and they replied that I had to pursue those on my own. They said that there was nothing they could do. They asked me for my FBI property and then escorted me out of the building.

I was never presented with any options such as retraining or a transfer to another unit. At the discretion of management I could have received a lateral transfer to the Instructional Training Support Unit at Quantico. In December of 2002, I had met with Unit Chief Tom Christianberry and Producer/Director John Garvin of the Instructional Television Services Unit. They were willing to take me on as a TDY in their Unit. But when they approached Acting U.C. Linden, Linden told them that he needed me at FAVIAU.

I understand that a fellow employee, Phil Williams, also had work issues with Linden but he was allowed to transfer to another Unit. Furthermore, I must wonder whether my recent

PAGE 5 OF __7__                                      AFFIANT'S INITIALS _M.E.E._

marriage to another FAVIAU employee may have also had some impact in the way I was treated by management.

## WITNESSES

I understand that the investigator will interview any witnesses who may be identified during the course of the investigation.

## CORRECTIVE ACTION

The corrective actions I seek are restoration of back pay, restoration of FBI duties, transfer to another division, and expunge the records regarding dismissal and the Does Not Meet Expectations PAR. Also, I ask that the results of this complaint be included in the personnel files of Musheno and Linden, and that Musheno be barred from any kind of supervisory or management position. Their PARs should be reviewed by the Office of Professional Responsibility for the period of time relating to the issues in this complaint in regard to the Critical Elements and misconduct.

I do not have any knowledge of any additional information that I believe is relevant to the scope of the inquiry as described to me by SSA GRACIA.

I have read this statement consisting of seven pages. The entire document is true and complete to the best of my knowledge and belief. I understand that the information I am giving is not to be considered confidential and that it may be shown to interested parties.

This interview is the result of a telephonic interview

PAGE 6 OF __7__                              AFFIANT'S INITIALS _illegible_

conducted by SSA Gracia on February 14, 2003.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on  MAY 29 , 2003.

*Merinda Ellis Evans*
MERINDA ELLIS EVANS

PAGE 7 OF  7              AFFIANT'S INITIALS  ME. E.