IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MERINDA ELLIS EVANS** <br><br> **Plaintiff**, <br><br> v. <br><br> **MICHAEL MUKASEY** <br><br> **Defendant.** | Civil No.: 05-1063 (GK) <br><br> **JURY TRIAL REQUESTED** |

## AMENDED COMPLAINT

**NOW COMES** Plaintiff, Merinda Evans, by and through undersigned counsel, for the purpose of filing this amended civil complaint:

### JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended by the 1991 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, hereinafter "Title VII;"

2. This action properly lies in the District Court for the District of Columbia because this judicial district has personal jurisdiction over Defendant. This action is also in accordance with 28 U.S.C. 1331.

### PARTIES

3. Merinda Evans is a citizen of the United States and resides in the State of Maryland.

4. In accordance with Title VII, she is a member of protected classes based on her race, African-American and gender, female.

Defendant, Alberto Gonzalez, is the Attorney General of the U.S. Department of Justice, a government agency, which is subject to the provisions of Title VII.

## ADMINISTRATIVE PROCEDURES

Plaintiff timely filed formal charges of discrimination against the Defendant with its Equal Employment Opportunity (EEO) Office on December 21, 2001 and on December 24, 2002, in accordance with EEOC Regulation 29 CFR 1614.106.

Plaintiff then requested a hearing before the U.S. EEOC.

Plaintiff has since elected to withdraw her discrimination complaint from before the U.S. EEOC and pursue a remedy through this civil action.

Plaintiff therefore has satisfied all administrative and judicial prerequisites to the institution of this action.

## COUNT I
## DISPARATE TREATMENT BASED ON GENDER AND RACE
## IN VIOLATION OF TITLE VII

10. Plaintiff re-alleges the allegations of Paragraphs 1 through 9, and incorporates them by reference herein.

11. Plaintiff, Merinda Ellis Evans, an African-American female, was employed as a Video Communications Specialist with the Federal Bureau of Investigations (hereinafter "FBI") in the Forensic Audio/Video and Image Analysis Unit (hereinafter "FAVIAU").

12. The FAVIAU consisted of two other Video Communications Specialists who were similarly situated to Plaintiff, Ronald Evans, an African-American male; and Robert Keller, a Caucasian male.

13. On March 15, 2001, the Plaintiff, Mr. Evans and Mr. Keller met with Section Chief Keith DeVincentis to speak with him regarding actions by management which they believed

hindered their effectiveness.

14. After the March 15, 2001 meeting, the above-referenced Video Communications Specialists were more closely scrutinized; however, Plaintiff was more heavily scrutinized than her fellow Video Communications Specialists.

15. In June 2001, Thomas Musheno became Plaintiff's, Mr. Evans' and Mr. Keller's supervisor, and the close scrutiny of Plaintiff continued. For example, Plaintiff received official reprimands for delinquent case examinations, but Mr. Keller was never officially reprimanded for being delinquent on case examinations.

16. Plaintiff was reprimanded for leaving her safe unlocked, which was included in her Performance Appraisal Report (hereinafter "PAR"). However, although Mr. Evans left his safe unlocked several times, as many times as Plaintiff, he only received a warning from Mr. Musheno for one of the incidents and it was not mentioned in his PAR.

17. On October 15, 2001, Plaintiff was denied compensatory time when she work a half an hour over her regular time.

18. On October 18, 2001, Plaintiff was denied one hour of compensatory time after she was asked to return some equipment to FBI headquarters. At around the same time, Plaintiff's work was also more intensely scrutinized. For example, special requirements were place on Plaintiff to report to Quantico, Virginia for weekly file reviews.

19. Although Plaintiff's co-workers, Mr. Evans and Mr. Keller, were also required to report to Quantico for weekly file reviews, Plaintiff was subjected to more file reviews than Mr. Evans and Mr. Keller.

20. In addition, Plaintiff was prohibited from attending a DVD technology training class that she was scheduled to attend. Plaintiff inquired with the Ombudsman and Unit Chief regarding the denial of training and given no reason why she was prohibited from attending the class. When the class was offered again, Plaintiff was allowed to attend.

21. On or about December 3, 2001, Plaintiff was advised that a Non-Serious Misconduct, Office of Professional Responsibility (hereinafter "OPR") investigation was opened concerning video games on her computer. The investigation was eventually expanded to include false statements allegedly made by Plaintiff.

22. As a result of the investigation, Plaintiff was suspended for ten days. Conversely, Mr. Keller has used the Agency's computer for personal matters during work hours and was verbally reprimanded on several occasions, but was not investigated or disciplined for such behavior.

23. Plaintiff avers that she was treated differently compared to a similarly-situated white male in that Phil Williams was permitted to transfer after performance problems and Plaintiff was denied a transfer and thereafter terminated for alleged performance problems.

24. Plaintiff can raise an inference of discriminatory animus by offering evidence comparing herself to similarly situated individuals that were treated more favorably than she by Defendant.

25. As a direct result of Defendant's discriminatory practices, Plaintiff has sustained economic and non-economic damages.

## COUNT II

## RETALIATION
## IN VIOLATION OF TITLE VII

26. Plaintiff re-alleges the allegations of Paragraphs 1 through 25, and incorporates them by reference herein.

27. Plaintiff filed an EEO complaint on December 21, 2001. In January 2002, Plaintiff received a "Does Not Meet Expectations" PAR from Mr. Musheno for the rating period ending November 30, 2001. To support the rating he gave Plaintiff, Mr. Musheno included incidents such as Plaintiff passing him in the hallway and not saying hello.

28. After receiving the January 2002 DNME PAR, Plaintiff was placed on a Performance Improvement Plan (hereinafter "PIP"). Mr. Evans and Mr. Keller also received a DNME PAR for the rating period ending November 30, 2001 and were both placed on a PIP.

29. Soon after filing the December 21, 2001 EEO complaint, beginning January 8, 2002, Plaintiff was assigned 11 expedite cases, which are special cases that required a quick turnaround time, out of 15 cases.

30. On or about October 30, 2002, Plaintiff was demoted from her Video Communications Specialist position to an undetermined status and her duties as Video Communications Specialist were reassigned.

31. On November 20, 2002, Plaintiff received another DNME in one critical element of her PAR.

32. On or about November 20, 2002, Plaintiff was advised that she would be required to

report to work at the FBI facility in Quantico, Virginia.

33. On December 24, 2002, Plaintiff filed her second EEO complaint. On February 14, 2003, Defendant terminated Plaintiff's employment.

34. As a result of the above-stated actions, Plaintiff suffered severe and emotional distress including, but not limited to, insomnia, loss of appetite, depression, anxiety, embarrassment, humiliation, symptoms of physical illness, despair, anger and loss of faith in her employer.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court should grant her the following relief, namely:

(I). That this Court determine the employment practices complained of in this complaint are unlawful in that they violated Title VII;

(ii). That Defendant be enjoined from continuing any and all discriminatory practices;

(iii). That Defendant pay Plaintiff a sum in excess of $300,000 for compensatory damages, backpay, interests, emotional distress;

(iv). That Defendant pay Plaintiff's costs and expenses and reasonable attorney's fees as provided in Title VII in connection with this action;

(v). That this Court grant other and such further relief to the Plaintiff as it deems just and proper.

Respectfully submitted on behalf of Plaintiff:

July 21, 2008                     _____/S/_____
                                  Nathaniel D. Johnson (Federal #14729 MD)

Richard L. Thompson (Bar # 15980)
LAW FIRM OF NATHANIEL D. JOHNSON
201 Centennial Street, Suite A-2
P.O. Box 1857
LaPlata, Maryland  20646
301-645-9103
301-861-0411 fax

7